ADL/2014R00504

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Claire C. Cecchi |
| | : | |
| v. | : | Crim. No. 19-CR-521(CCC) |
| | : | |
| TIMOTHY CLEMENTS | : | 18 U.S.C. §§ 1341, 1957, and 2 |

## INFORMATION

The defendant having waived in open court prosecution by indictment,

the United States Attorney for the District of New Jersey charges:

At all times relevant to this Information:

## The Defendant

1.    Defendant TIMOTHY CLEMENTS ("CLEMENTS") owned and

operated a company called TCA Mailing, Inc., located in the State of New Jersey.

## Relevant Individuals and Entities

2.    C1 was engaged in mass mailing solicitations to individuals across

the United States about receiving services from persons who were purportedly

psychics.  C1 pursued these mass mailings through, and in the name of, one or

more entities with which C1 was associated (the "C1 Entities"), which C1

identified as being located outside the United States.

3.    DMD was a US based company engaged by C1 to send out the mass

mailed solicitations for psychic services.

4.   TCA Mailing, Inc., referred to in paragraph 1, above, was engaged by

C1 to collect the funds generated by those solicitations and transmit those funds to C1 and/or the CI Entities through a third-party, referred to herein as the Funds Transmitter. The Funds Transmitter was located in Canada.

5. TCA Bank was a financial institution within the meaning of Title 18, United States Code, Section 1956(c)(6)(A), at which TCA Mailing, Inc. maintained a checking account.

### The Caging Process

6. As used herein, "caging" refers to the second part of a two-step mass mailing process. The first step of the mass mailing process generally consists of composing, mailing out, and tracking responses to a mass mailing solicitation. The second, "caging" step of the mass mailing process is to then bill individuals who responded positively to the mass mailing, collect funds from those individuals, and cause those collected funds to be transmitted to the person or entity offering the goods or services identified in the mass mailing.

### The Fraudulent Scheme

7. Between in or about May 2015 and in or about August 2016, the defendant CLEMENTS knowingly participated with C1 in a scheme to illegally obtain in excess of one hundred thousand dollars by fraudulently soliciting multiple individuals on behalf of C1 to pay C1 for psychic services, in the manner and using the means detailed below.

### Goal of the Fraudulent Scheme

8. The goal of the fraudulent scheme was for C1 and defendant

CLEMENTS to enrich themselves by deceiving Solicited Persons, as defined below, into paying for what had been marketed as free psychic services.

### Manner and Means of the Fraudulent Scheme

9.     It was a part of the scheme that C1 engaged DMD to print and mail solicitations to individuals across the United States, who were promised that their lives would be substantially improved through "free" information provided from two purported psychics identified in the solicitations as "Awena del Pozzo" and "Joseph v. J" (the "Solicitations").

10.     It was a further part of the scheme that C1 then provided the names and addresses of individuals that responded positively to the Solicitations (the "Solicited Persons") to TCA Mailing, Inc., and caused TCA Mailing, Inc. to seek payment from the Solicited Persons - as donations or gifts to a named psychic - for what the Solicited Persons had earlier been told were free services.

11.     It was a further part of the scheme that Solicited Persons who declined to pay for these services were then sent a series of follow-up invoices by TCA Mailing, Inc., that sought to induce payment for the psychic services by escalating the amounts owed and consequences faced by Solicited Persons who remained unwilling to pay for those services.  For example, in one subsequent invoice, TCA Mailing, Inc. informed Solicited Persons that the previously requested donation or gift was actually a bill.  If that bill remained unpaid, TCA Mailing, Inc. sent another invoice adding a late fee to the initial bill. This was

followed by one or more additional invoices, culminating in a "Final Notice" stating that the Solicited Person's account had been passed to a collection agency, and that a continued failure to pay it would be "prosecut[ed] . . . to the full extent of the law," would "definitely affect" the Solicited Person's credit history, and would also result in the assessment of yet more fees.

12.    It was a further part of the scheme to defraud that, upon collecting fees from Solicited Persons defendant CLEMENTS caused those fees to be sent to C1 and/or the C1 Entities through the Funds Transmitter, and C1 paid defendant CLEMENTS for providing "caging" services in connection with the scheme.

### Count One - Mail Fraud

13.    Paragraphs 1 through 12 of this Information are realleged and incorporated herein.

14.    On or about the July 6, 2016, in Passaic County, in the District of New Jersey and elsewhere, defendant

TIMOTHY CLEMENTS

having devised and intending to devise a scheme and artifice to defraud Solicited Persons, and to obtain money and property from them by means of false and fraudulent pretenses, representations, and promises, did for the purpose of executing and attempting to execute such scheme or artifice, knowingly cause to be placed in any post office or authorized depository for mail any matter or thing to be sent or delivered by the Postal Service; to wit, an

˘4˘

invoice dated July 6, 2016 to a Solicited Person referred to herein as RS, informing RS that her failure to remit the payment for psychic services provided by Josef v. J. would result in RS being sent to a collection agency, negatively impact her credit history, and result in the assessment of additional fees.

All in violation of Title 18, United States Code, Sections 1341 and 2.

## Count Two - Money Laundering

15.    Paragraphs 1 through 12 of this Information are realleged and incorporated herein.

16.    On or about July 21, 2015, in Bergen County, in the District of New Jersey and elsewhere, defendant,

TIMOTHY CLEMENTS

did knowingly engage and attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000, that is, by causing a check from C1 in the amount of $20,000 to be deposited into an account maintained at a financial institution, while then knowing that these funds were derived from specified unlawful activity, that is, mail fraud, in violation of Title 18 United States Code, Section 1341.

All in violation of Title 18, United States Code, Section 1957 and Section 2.

Craig Carpenito
United States Attorney

6

CASE NUMBER: _19-CR-521(CCC)_

# United States District Court
# District of New Jersey

## UNITED STATES OF AMERICA

### v.

**TIMOTHY CLEMENTS**

# INFORMATION FOR

18      **U.S.C.** §§      1341, 1957 and 2

CRAIG CARPENITO
UNITED STATES ATTORNEY
FOR THE DISTRICT OF NEW JERSEY

ANDREW LEVEN

ASSISTANT U.S. ATTORNEY

(973) 645-2700